**ANDREWS et al. v. UNITED STATES.**

No. 4544.

Circuit Court of Appeals, Fourth Circuit.

Dec. 28, 1939.

Louis H. Solomon, of New York City, and Frank E. Parrack, of Kingwood, W. Va. (Donald K. Crawford, of Elkins, W. Va., on the brief), for appellants.

Jacob S. Hyer, Asst. U. S. Atty., of Elkins, W. Va. (Joe V. Gibson, U. S. Atty., of Kingwood, W. Va., Bantz W. Craddock, of Glenville, W. Va., and Wayne T. Brooks, of Clarksburg, W. Va., Asst. U. S. Attys., on the brief), for appellee.

Before PARKER and SOPER, Circuit Judges, and COLEMAN, District Judge.

PARKER, Circuit Judge.

The appellants Lewis H. Andrews, Homer Vincent Hart, Jr., and Albert A. Scher were indicted in the court below with one Harry W. Sencindiver under 18 U.S.C. § 88, 18 U.S.C.A. § 88, for conspiracy to transport stolen merchandise of the value of $5,000 or more in interstate commerce and to receive, conceal, store, barter, sell and dispose of same after it had been stolen and with knowledge thereof in violation of 18 U.S.C. §§ 415 and 416, 18 U.S.C.A. §§ 415, 416. Sencindiver pleaded guilty to the charge contained in the indictment and the other defendants were convicted by a jury and from sentence of imprisonment have appealed. Their principal contention is that there was a fatal variance between the conspiracy charge in the indictment and the proofs, in that the indictment charges a single conspiracy whereas the proofs show independent conspiracies between Sencindiver and each of the other defendants.

A careful review of the evidence in the case convinces us that with respect to appellants Andrews and Scher a conspiracy with Sencindiver of the sort charged in the indictment is clearly shown; that Hart was not shown to be a party to this conspiracy but to a separate conspiracy with Sencindiver; that no prejudice resulted to Andrews and Scher from the fact that they were tried with Hart and that their conviction under the indictment should be affirmed; but that, since the conspiracy of Hart and Sencindiver related to merchandise of a value of less than $5,000, and since he was not shown to have been connected with the principal conspiracy which involved merchandise in excess of that value, his conviction must be reversed.

The facts, briefly stated, are as follows: Sencindiver was a shipping clerk of the Dunn Mfg. Co. at Martinsburg, W. Va. That company was engaged in the manufacture of high grade upholstery cloth having a value of $1.75 to $2.25 per yard. During the year 1937 he stole from the company 246 rolls of this cloth of a value of $27,508.50, and, during the succeeding year, 49 rolls of a value of $5,038.17, which he disposed of to his co-defendants Andrews, Scher and Hart for about one-third of its value. The portion of the cloth received by Hart, however, was of a value less than $1,000. The cloth was transported in interstate commerce, partly by motor carrier and partly by private automobiles, to Hagerstown, Md., whence the greater part of it was shipped by motor carrier to points in other states.

Andrews was employed at first as manager of an automobile garage owned by the H. V. Hart Company, in which the defendant H. V. Hart, Jr., was employed as a salesman of second hand automobiles. Cloth of the same sort as that stolen by Sencindiver had been purchased from him by Hart's father on two or three occasions at a low price and used in the garage; but there is no evidence of any criminality in connection with these purchases or that

514

the defendant Hart had anything to do with them. Early in 1937 Andrews began purchasing cloth from Sencindiver and selling it to Scher who was a traveling salesman employed by a company in New York. In June 1937, he severed his connection with the Hart company and handled the transactions in the cloth from a garage which he established at another location. In January 1938, Scher began buying the cloth directly from Sencindiver and making payments directly to him. Hart had no dealings in the cloth until June 1938 and his dealings then were directly with Sencindiver. He is not shown to have had anything whatever to do with the dealings had by Andrews or Scher, and the evidence is clear that Scher protested to Sencindiver when he found that sales were being made to him.

■ The evidence clearly establishes as against Andrews, Scher and Sencindiver the conspiracy charged. Sencindiver admits stealing the cloth and the circumstances of his dealings with Andrews and Scher clearly support if they do not compel the inference that they knew he was stealing it. They were purchasing valuable merchandise from a mere shipping clerk at one-third of its value, or less. They were paying him for it in cash instead of in accordance with invoices presented by the owner. They were sending him money by telegraph addressed to him, not at his place of business, but in care of a lodge of which he was a member. The cloth was being taken from the plant after business hours and frequently at night; and Scher, as well as Andrews, knew of this fact, for the evidence shows that he made an automobile trip with Andrews to Martinsburg at night in October 1937 to obtain cloth. When Scher began purchasing direct from Sencindiver, he followed the same practice that had been followed by Andrews of sending money by telegraph in care of the lodge. Not only was the transportation in interstate commerce shown, but it is clear from the evidence that such transportation was contemplated from the beginning and that without the use of interstate commerce the fraud on the company could not have been perpetrated. Sencindiver was doing the stealing. Scher was furnishing a market for the stolen goods. Andrews, who seems to have devised the scheme, was acting as go-between, getting the goods from Sencindiver and shipping them on to Scher, until the latter began to purchase directly from Sencindiver.

■ It is argued that no violation of the federal statute was committed or could have been the object of the conspiracy because the value of no one of the shipments was of a value of as much as $5,000. It is clear, however, that the various shipments made in 1937, which were of a total value in excess of $27,000, were not separate and independent transactions, but were made pursuant to the conspiracy between Sencindiver, Andrews and Scher; and that this conspiracy gave them unity for the purpose of the statute. While, of course, transactions which are entirely separate and distinct cannot be grouped for the purpose of establishing a value within the statute, they may be considered together where they are not separate and distinct but are the carrying out of a single plan or conspiracy. The statute makes it a criminal offense to transport stolen goods of the value of $5,000 or more in interstate commerce; and it can make no difference that the transportation is accomplished by a number of different shipments, provided all are made pursuant to a single plan or agreement. It is argued, also, that the conspiracy charge cannot be sustained because the transportation of goods of the value of $5,000 was not shown to have been agreed upon even though the total of the goods actually transported exceeded that value. A sufficient answer to this, however, is that goods exceeding that value were in fact transported pursuant to the agreement; and this, in itself, is evidence that transportation of goods of such value was contemplated by the conspiracy.

■ And we do not think that the proof of the independent but similar conspiracy between Hart and Sencindiver along with the proof of the principal conspiracy against Andrews, Scher and Sencindiver was in any wise prejudicial either to Andrews or to Scher. The testimony as to Hart in no way involved them or pointed to their guilt; and the guilt of Sencindiver with respect to the goods sold them, as well as with respect to the goods sold Hart, was established beyond question by his own testimony. It is argued that Andrews dropped out of the principal conspiracy in January 1938 and that the subsequent dealings between Scher and Sencindiver were an independent conspiracy. But Andrews could not have been prejudiced by the evidence that Scher carried on the dealings with Sencindiver in the way in which he himself had been carrying them on; and certainly Scher is in no position to complain. The fact is that the evi-

dence of the guilt of Andrews, Scher and Sencindiver of the conspiracy charged is so overwhelming that it is not possible that their cause could have been prejudiced before the jury by the evidence as to separate dealings with Sencindiver by Scher and Hart. The rule applicable is that laid down in Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314, a case dealing with proof of separate conspiracies, where the court, after quoting Sec. 269 of the Judicial Code, as amended, 28 U.S.C.A. § 391, said: "The true inquiry, therefore, is not whether there has been a variance in proof, but whether there has been such a variance as to 'affect the substantial rights' of the accused. The general rule that allegations and proof must correspond is based upon the obvious requirements (1) that the accused shall be definitely informed as to the charges against him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at the trial; and (2) that he may be protected against another prosecution for the same offense. * * * Evidently Congress intended by the amendment to section 269 to put an end to the too rigid application, sometimes made, of the rule that error being shown, prejudice must be presumed; and to establish the more reasonable rule that if, upon an examination of the entire record, substantial prejudice does not appear, the error must be regarded as harmless."

■ On the same ground we would affirm the conviction as to Hart, but for the fact that the conspiracy to which he is shown to be a party did not concern the transportation of merchandise of a value of $5,000 or more. Not having been connected with the principal conspiracy, his guilt must rest upon the evidence as to his dealings with Sencindiver in 1938; and the total of the goods received by him from Sencindiver was not as much as $1,000. It is said that his dealings with Sencindiver showed a conspiracy which was not limited as to the amount of the stolen goods to be transported. This is true; but, as there is no evidence of agreement to transport goods of the value of $5,000 or more, and as goods of that amount were not transported, there is nothing upon which to base a finding that the conspiracy contemplated a transportation of such magnitude as to constitute a violation of the statute. The evidence is sufficient to show that he received stolen goods knowing them to have been stolen and that he con-

spired with Sencindiver to handle them in interstate commerce; but before he can be convicted of conspiracy to violate the statute here involved it must appear that the goods to which the conspiracy related were of a value of $5,000 or more.

■ ■ It is argued that there is a variance between allegation and proof because conspiracy to violate secs. 415 and 416, 18 U.S.C.A. is charged and no conspiracy to violate sec. 416 is shown. It appears from the evidence that several lots of the stolen cloth were taken from box cars in which they had been placed with other cloth which was being shipped. See record 40, 41, 50, 58, 135. And the reference to sec. 416 in the indictment was probably intended to meet the possibility of proof that the larceny was contemplated with respect to goods which had become a part of interstate commerce. Whether the proof shows a violation of sec. 416, we need not stop to inquire, as it is well settled that an indictment charging as the object of a conspiracy the violation of a number of statutes is sustained by proof of conspiracy to violate any one of them. Short v. United States, 4 Cir., 91 F.2d 614, 622, 112 A.L.R. 969; McWhorter v. United States, 5 Cir., 62 F.2d 829; United States v. Baker, 2 Cir., 61 F.2d 469; Kepl v. United States, 9 Cir., 299 F. 590, 591.

■ In their supplemental brief, counsel for appellants state that they requested the court to charge that there could be no conviction of conspiracy to violate sec. 416. We have examined their requests to charge and find no such request among them. Counsel refer to no assignment of error directed to the point and it is not mentioned in their original brief, which, of course, abandons all points not mentioned therein. An examination of the bill of exceptions shows no separate exceptions to refusal of instructions but a mere wholesale exception held insufficient in Thiede v. Utah, 159 U.S. 510, 520, 16 S.Ct. 62, 40 L. Ed. 237, and Baker v. United States, 4 Cir., 21 F.2d 903, 906, 907. But even if such an instruction had been asked and refused and proper exception taken to the refusal, no reversible error would be shown. The agreement and plan of the conspiracy, charged to constitute conspiracy to violate secs. 415 and 416, were set forth in the indictment. The issue before the jury was whether the defendants had entered into the agreement and plan as charged, and an instruction that same would constitute a vio-

**516**

lation of sec. 415 but not of 416 could not have been of the slightest benefit to appellants or have affected the verdict in any way. The error, if any, was purely technical. It could not have affected the substantial rights of the parties and must be ignored under sec. 269 of the Judicial Code as amended, 28 U.S.C.A. § 391. Berger v. United States, supra.

 Reversal is sought, also, because the trial judge did not instruct the jury not to consider against each of the several defendants evidence admitted against the others and admissible only against them. For reasons heretofore stated, the testimony relating to the defendant Hart was not admissible against the defendants Andrews and Scher, but its admission could not have prejudiced them. As to the acts and conduct of the other defendants, the jury were justified under the evidence in inferring that they were parties to the conspiracy charged and in considering against all of them the acts and conduct of each in furtherance of the conspiracy. The contention was made that Andrews withdrew from the conspiracy in January 1938, but, as heretofore stated, if this were the case, the evidence as to the subsequent conduct of Scher, even if relating to a separate conspiracy, could not have prejudiced him. The whole matter was adequately covered by the trial judge in the charge to the jury wherein he said: "If you believe from the evidence that any of the defendants on trial actually and in good faith withdrew from the conspiracy while it was still in operation, that defendant is not responsible for the acts of the remaining members of the conspiracy performed after his withdrawal, nor is he bound by their declarations made after such withdrawal. However, if you believe such defendant or defendants having joined the conspiracy, he is bound by the acts of the others until he does such act to disavow or defeat its purpose, he is in no situation to claim that he is not a part thereof."

Other matters discussed in the briefs are so lacking in merit as not to justify discussion here. The original bill of exceptions has been examined; and we are satisfied that the case was carefully and impartially tried and that there was no error affecting any substantial right of Andrews or Scher. For the reasons heretofore stated, a new trial must be awarded the defendant Hart.

Affirmed as to Andrews and Scher. Reversed as to Hart.