**UNITED STATES of America,**
**Appellee,**

v.

**Angelo CHIEPPA, Abe Ivicola, An-**
**thony Petti, and Joseph D. Pol-**
**verino, Appellants.**

**No. 174, Docket 24372.**

United States Court of Appeals
Second Circuit.

Argued Dec. 10–11, 1956.

Decided Feb. 14, 1957.

See, also, 146 F.Supp. 268.

Louis Bender, New York City, for defendants-appellants.

Paul W. Williams, U. S. Atty., and Louis Bender, New York City (Robert Kirtland, Asst. U. S. Atty., New York City, of counsel), for appellee.

Before SWAN, MEDINA and WATERMAN, Circuit Judges.

WATERMAN, Circuit Judge.

Angelo Chieppa, Abe Ivicola, Joseph Polverino, and Anthony Petti appeal from judgments of conviction for several offenses relating to the operation of an illicit distillery. One count charged a conspiracy under 18 U.S.C. § 371, whereas the other counts charged substantive violations of the Alcohol Tax Laws under former 26 U.S.C. §§ 2833, 2810, 2834, and 2803(a), Int.Rev.Code of 1939. Chieppa and Polverino were charged on all counts of the indictment. Ivicola and Petti were charged only on the conspiracy count and on one substantive count. The appellants were tried along with several other defendants who, for various reasons, are not before us on appeal.

One of the defendants below, Indian Hills Farms, Inc., of which one Michael Clemens was president, owned a farm outside of Southfields, New York. Mr. Clemens and his wife occupied the main house, which was over half of a mile back from the highway. A small tenant house and a barn were located about 1200 feet behind the main house.

According to his own testimony, Agent Lane of the Alcohol and Tobacco Tax Division was instructed by another agent to appear at the Newburgh office of that bureau between two and three o'clock in the morning of August 18, 1953. At 6:30 A.M. of the same day, in the company of other Treasury agents and several state troopers, Lane, without a search warrant or warrant for arrest, entered the farm through the front entrance, drove past the main house, and parked near the barn. As his car approached the small tenant house, he saw one of the defendants—not an appellant here—running from that building toward the barn and up a hillside. Three other agents set out in pursuit. Another defendant was then seen coming out of the barn and running in the same direction as the first. Lane got out of his car and then smelled an odor that he claimed to recognize as fermenting mash and cooking alcohol. He also saw vapors rising from the ground near the barn. He went to the door of the barn, looked inside, and saw a copper column still, five-gallon cans, and alcohol running into a large receiving tank. Thereupon Lane took up the chase after the two defendants mentioned above. He eventually caught up with them and placed them under arrest.

Later in the same day, about 11:00 A.M., a state trooper who had been stationed on the farm about half way between the entrance and the barn sig-

nalled an approaching car to stop. Appellants Chieppa and Polverino, and another defendant, were its occupants. The trooper entered the car and directed the driver to the place where the other defendants were being held by the Treasury agents. He then turned them over to Agent Lane, who placed them under arrest. Lane then searched the car, finding a carton on the floor containing a can of soda and various plumbing fittings. He testified at the trial that these articles were of a type commonly used in distilleries. He also testified that Chieppa at the time of the arrest claimed to have borrowed the car solely to take a ride, and that Polverino had joined him in order to share that pleasure.

All the defendants, except Indian Hill Farms, Inc., have repeatedly disclaimed any interest, either possessory or proprietary, in the barn and its contents. The owner and president of Indian Hill, Michael Clemens, died a year before this case came on to trial, which was held three years after the "raid" by the Treasury agents. Appellants Chieppa and Polverino also deny that they had any interest in either the car or the contents of the car in which they were apprehended.

**I**

■■■■ The appellants here contend that the trial court erred in admitting as evidence photographs of the still equipment found in the barn and samples of mash taken from the vats in the barn. They also claim error in admitting photographs of the plumbing fittings found in the car in which Chieppa and Polverino were apprehended. These objections were urged for the first time at trial upon the introduction of this evidence by the Government. In support thereof, the appellants claimed that the "raid" on the farm constituted an illegal search and seizure because it was undertaken without either a search warrant or a warrant for arrest. They also assert that the arrest of Chieppa and Polverino was illegal. The appellants rely heavily on the decisions of the Supreme Court in McDonald v. United States, 1948, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153, and Johnson v. United States, 1948, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436. The Government, on the other hand, contends that the search of the barn was incident to a valid arrest and therefore permissible.

We expressly decline to pass upon the validity of the "raid" and the ensuing search and arrests. The trial judge overruled the objections to this evidence made for the first time at trial on the ground that the defendants had waived whatever rights they might have had by failing to make a timely motion under Rule 41(e)[1] to suppress the evidence before trial.

In their attack on the trial court's ruling, the appellants allege, *inter alia,* that they lacked the necessary knowledge to make a motion to suppress before trial. This argument is untenable insofar as it is directed at the photographs

1. Rule 41(e) of the Federal Rules of Criminal Procedure, 18 U.S.C., reads as follows:

"*Motion for Return of Property and to Suppress Evidence.* A person aggrieved by an unlawful search and seizure may move the district court for the district in which the property was seized for the return of the property and to suppress for use as evidence anything so obtained on the ground that (1) the property was illegally seized without warrant, or (2) the warrant is insufficient on its face, or (3) the property seized is not that described in the warrant, or (4) there was not probable cause for believing the existence of the grounds on which the warrant was issued, or (5) the warrant was illegally executed. The judge shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted the property shall be restored unless otherwise subject to lawful detention and it shall not be admissible in evidence at any hearing or trial. The motion to suppress evidence may also be made in the district where the trial is to be had. The motion shall be made before trial on hearing unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion, but the court in its discretion may entertain the motion at the trial or hearing."

of the plumbing fittings, because Chieppa and Polverino were present at the time the car containing the fittings was searched. If they were unaware of the lack of a warrant, they could have easily acquired that information far in advance of the trial. Since they had at least a possessory interest in the contents of the car, they were entitled to move for their return and suppression as evidence. See Steeber v. United States, 10 Cir., 1952, 198 F.2d 615, 617, 33 A.L.R.2d 1425; Daddio v. United States, 2 Cir., 1942, 125 F.2d 924, 925.

As for the photographs of the interior of the barn and the samples of mash, the appellants claim that they did not have a sufficient interest in the barn or its contents to invoke Rule 41(e) before trial. They contend, however, that they had standing to object to the admission of this evidence at trial because it was prejudicial to them. In support of this novel position, the appellants appear to rely on McDonald v. United States, 1948, 335 U.S. 451, 69 S.Ct. 191. But we do not construe that case as a deviation from the established rule, because there the party with the necessary interest in the property, McDonald, had in fact made a timely motion for suppression prior to trial. Before holding the admission of certain evidence prejudicial to the defendant Washington, McDonald's guest, the Supreme Court first found error in the denial of McDonald's motion. In the case at bar there was no pre-trial motion by any of the defendants and hence no underlying error the effects of which could be considered prejudicial to the appellants. The defendant Indian Hill Farms, or someone acting in its behalf, had ample time to make a motion to suppress prior to the trial. Michael Clemens, who must have been aware of the "raid," died a year before trial, but two years after the "raid," during which time he made no effort to invoke Rule 41(e). Nor did the successor to his interest in Indian Hill attempt to utilize this provision.

In view of these facts, we hold that the trial court properly declined to exercise its discretion under Rule 41(e), and therefore no error occurred. United States v. Sansone, 2 Cir., 1956, 231 F.2d 887; United States v. Salli, 2 Cir., 1940, 115 F.2d 292.

## II

■ Appellants Chieppa and Polverino also allege error in the admission of certain testimony by Joseph J. Jones, the principal witness for the Government. Jones testified roughly as follows: He had been employed by Mr. Clemens as a caretaker for Indian Hill Farms. During the course of the employment Clemens made an arrangement with the other defendants whereby they were to use his premises for the installation and operation of an illegal still. The witness was required to perform many menial chores in the construction and maintenance of the still. The other defendants played roles of varying significance in this undertaking.

The specific testimony to which appellants Chieppa and Polverino object related to a conversation between Jones and the appellants Ivicola and Petti. According to this testimony, about four days after the "raid" Jones was approached by these two appellants and instructed by Ivicola "not to talk to any Federal agents." Jones was further told that in exchange for his silence he would "be taken care of." Appellants Chieppa and Polverino argue that the testimony was inadmissible against them, since the conspiracy for which they were charged was terminated at the time of the "raid" and the ensuing arrests. Therefore the statement made by Ivicola could not be admitted against parties not present at the time of its making because it was not made in furtherance of the conspiracy. Krulewitch v. United States, 1949, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790; Fiswick v. United States, 1946, 329 U.S. 211, 67 S.Ct. 224, 91 L.Ed. 196; see Paoli v. United States, 1957, 352 U.S. 232, 237–239, 77 S.Ct. 294, 297–298, 1 L.Ed.2d 278.

The conversation here testified to is remarkably similar in both its content and surrounding circumstances to that

held erroneously admitted in Krulewitch. There the complaining witness, who, as in the case at bar, was also an accomplice but not a defendant, related a conversation wherein an alleged co-conspirator of the appellant instructed the witness not to divulge any information to the police. The Supreme Court rejected the argument that an implicit subsidiary phase of the original conspiracy was an agreement to conceal that conspiracy:

> "The rule contended for by the Government could have far-reaching results. For under this rule plausible arguments could generally be made in conspiracy cases that most out-of-court statements offered in evidence tended to shield co-conspirators. We are not persuaded to adopt the Government's implicit conspiracy theory which in all criminal conspiracy cases would create automatically a further breach of the general rule against the admission of hearsay evidence." United States v. Krulewitch, supra, 336 U.S. at page 444, 69 S.Ct. at page 719.

We believe that the rule announced in Krulewitch applies to the facts of this case and that the trial court committed error in admitting this testimony against the appellants Chieppa and Polverino. There was nothing exceptional about this conspiracy to warrant a conclusion that it continued past the "raid" and the arrest, nor is there any evidence, other than the clandestine attitude of all conspirators, that part of the original conspiracy was an agreement to conceal the evidence of that conspiracy. The case at bar is thus clearly distinguishable

from United States v. Grunewald, 2 Cir., 1956, 233 F.2d 556, certiorari granted 1956, 352 U.S. 866, 77 S.Ct. 91, 1 L.Ed. 2d 74.[2]

Although we find that the admission of this particular testimony was error, we will not order a reversal solely on the ground of that error if it was "harmless," *i. e.,* if it did not affect "substantial rights." Rule 52(a) of the Federal Rules of Criminal Procedure. In Kotteakos v. United States, 1946, 328 U.S. 750, 66 S. Ct. 1239, 90 L.Ed. 1557, the Supreme Court set forth the following broad formulation of "harmless error."

> "If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand, except perhaps where the departure is from a constitutional norm or a specific command of Congress. Bruno v. United States, supra, 308 U.S. [287] at page 294, 60 S.Ct. [198] at page 200 [84 L.Ed. 257]. But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand." Kot-

---

**2.** In Grunewald, this court relied on three theories of evidence as proof of a continuing conspiracy to "fix" taxes after the last actual "fix" occurred. (1) Certain activities of the defendants indicated that they continued to conduct "business as usual"; (2) the nature of the conspiratorial objectives required that the defendants protect their clients from income tax prosecutions even after the favorable rulings were obtained in their behalf and thus these rulings were only a "substantial installment" of the consideration bargained for; (3) the defendants committed a number of overt acts after the last "fix" from which the jury could reasonably infer that the original conspiracy to fix taxes expressly included an agreement to conceal evidence of that conspiracy. None of these elements are present in the case at bar. For a discerning analysis of the relationship of the Grunewald case to the Krulewitch doctrine, see Note, The Grunewald Case: Problems of Conspiracy and Self-incrimination, 56 Colum.L.Rev. 1216 (1956).

teakos v. United States, supra, 328 U.S. at page 764–765, 66 S.Ct. at page 1248.

We think that in the particular trial setting of this case the single cryptic reference by Jones to the efforts of two of the appellants to suppress evidence of their activities did not affect the "substantial rights" of the two appellants who were not present. Its admission therefore was "harmless error" within the meaning of Rule 52(a).

This error was harmless because the Government's case was overwhelming and hence the "record fairly shrieks the guilt" of all the appellants. Lutwak v. United States, 1953, 344 U.S. 604, 619, 73 S.Ct. 481, 490, 97 L.Ed. 593. As in Lutwak, "we have found only one instance where a declaration made after the conspiracy had ended was admitted against all of the alleged conspirators, even though not present when the declaration was made," and therefore "we cannot conceive how this one admission could have possibly influenced this jury to reach an improper verdict." Ibid.

There is not the slightest doubt that an illegal still was being operated on the premises of Indian Hill Farms at the time of the "raid," a fact that even the defendants' lone witness, Mrs. Jean Clemens, the widow of Michael Clemens, eventually conceded. Ample testimony by several uncontradicted Government witnesses linked appellants Chieppa and Polverino with the conspiracy. Shortly after the raid they were apprehended on the private premises of this remote farm in a car filled with equipment that was obviously intended for use in the operation of the still. In addition, Jones testified to many occasions on which he received instructions from these two appellants relative to the construction and operation of the still. According to his testimony, which was not effectively impeached by defense counsel, Chieppa and Polverino were frequently on the farm during the construction of the still and actually participated in its installation.

Neither appellant offered any persuasive evidence of his innocence. Indeed, the only witness for the defense, Mrs. Clemens, the wife of the owner of the farm, recounted an incredible tale to the effect that the defendants were constructing a swimming pool, not a still, on her husband's property; that the farm was leased to tenants who could not be found at their alleged address; and that she would give any testimony in court that a lawyer advised, even if she thought it to be false, because an attorney "knows the law better than me." [3]

Because we believe that no reasonable jury could have acquitted the appellants on the basis of the evidence presented below, we hold that the admission of this conversation against all of the appellants was "harmless error." See United States v. Tramaglino, 2 Cir., 1952, 197 F.2d 928, 932, certiorari denied, 1952, 344 U.S. 864, 73 S.Ct. 105, 97 L.Ed. 670.

### III

The appellants also allege error in the trial court's charge to the jury, but we think that this claim is entirely without merit.

Affirmed.

---

**3.** For an evaluation of Mrs. Clemens' testimony, see United States v. Chieppa, D.C., S.D.N.Y.1956, 146 F.Supp. 267, 270.