## VACHUDA v. UNITED STATES.

Circuit Court of Appeals, Second Circuit.
August 15, 1927.

No. 393.

**1. Poisons ⊜⇒9—Guilt of unlawful importation of narcotic drugs held for jury (21 USCA § 174).**

In prosecution for unlawful importation of narcotic drugs, brought under Act Feb. 9, 1909, § 2, subd. C, as amended by Act May 26, 1922, § 1, and Act June 7, 1924 (21 USCA § 174), evidence of guilt *held* sufficient to go to jury.

**2. Poisons ⊜⇒9—Guilt of unlawfully and fraudulently concealing narcotic drugs with knowledge of unlawful importation held for jury (Tariff Act 1922 [19 USCA §§ 493, 495–497]).**

In a prosecution for unlawfully and fraudulently concealing narcotic drugs, with knowledge that they had been unlawfully imported into the United States, brought under Tariff Act 1922, §§ 591–593b (19 USCA §§ 493, 495–497), evidence of guilt *held* sufficient to go to jury.

**3. Poisons ⊜⇒9—Guilt of unlawfully and knowingly introducing narcotic drugs into commerce of United States by fraudulent scheme held for jury (Tariff Act 1922 [19 USCA §§ 493, 495–497]).**

In a prosecution for unlawfully and knowingly introducing narcotic drugs into the commerce of the United States by fraudulent scheme, brought under Tariff Act 1922, §§ 591–593b (19 USCA §§ 493, 495–497), evidence of guilt *held* sufficient to go to jury.

**4. Conspiracy ⊜⇒48—Guilt of conspiracy to unlawfully import narcotic drugs, to unlawfully and fraudulently conceal them with knowledge of their unlawful importation, and to violate statute taxing narcotics, held for jury (Criminal Code [18 USCA § 88]).**

In a prosecution for conspiracy to unlawfully import narcotic drugs, to unlawfully and fraudulently conceal the same drugs with knowledge that they had been unlawfully imported into the United States, and to violate Harrison Anti-Narcotic Act, § 1, as amended by Act Feb. 24, 1919, § 1006, as re-enacted by Act Nov. 23, 1921, § 1005 (26 USCA § 211 [Comp. St. § 6287g]), taxing narcotic drugs, brought under Criminal Code, § 37 (18 USCA § 88; Comp. St. § 10201), evidence of guilt *held* sufficient to go to jury.

**5. Criminal law ⊜⇒1159(2)—Verdict finding defendants guilty cannot be disturbed by Circuit Court of Appeals, if evidence was sufficient to go to jury as to each defendant.**

If there is sufficient evidence as to each defendant to require the submission of his guilt to the jury, the verdict of the jury finding the defendants guilty cannot be disturbed by the Circuit Court of Appeals.

**6. Criminal law ⊜⇒824(5)—Failure to instruct that evidence was not binding on one of defendants held not reversible, in absence of request for instruction.**

Where there was no motion to limit testimony to one defendant, or to instruct the jury that the testimony would have no binding effect on another defendant, failure to so instruct was not reversible error.

**7. Criminal law ⊜⇒695(1)—Objection to testimony as far as affecting one defendant held ineffectual, where testimony was admissible against another defendant.**

Objection to testimony, so far as it affected one defendant, *held* ineffectual, where the testimony was admissible against another defendant, and the total exclusion of the testimony would have been error; the court not being

bound to do more than to respond to motion and objection in the terms in which they are made.

**8. Criminal law ⟜1169(7)—Testimony that one alleged conspirator and defendant referred to another alleged conspirator and defendant as the boss held harmless, where first conspirator had made similar reference before conspiracy ended (Criminal Code [18 USCA § 88]).**

In a prosecution for conspiracy, brought under Criminal Code, § 37 (18 USCA § 88), admission of testimony that one defendant had referred to another defendant as the boss *held* harmless, where the first defendant had referred to the second defendant as the boss in a statement to another made before the end of the conspiracy.

**9. Criminal law ⟜768(3)—Charge urging jury to agree, but cautioning them that it was duty of each juror to follow own conscientious conviction about case, and every phase of it, held not error.**

Charge urging the jury to agree on a verdict, but cautioning them that each juror was entitled to his own conscientious conviction about the case, and every phase of it, and that each juror had the right, and it was his duty, to follow that conviction, *held* not error.

L. Hand, Circuit Judge, dissenting in part.

In Error to the District Court of the United States for the Southern District of New York.

William Vachuda, alias William Fox, and others, were indicted on six counts, under Act May 26, 1922, § 1, amending Act Feb. 9, 1909, and § 2, subd. C, Act June 7, 1924, Tariff Act 1922, §§ 591–593b, Act Dec. 17, 1914, § 1, as amended, and Criminal Code, § 37, and convicted on four counts, to wit, unlawful importation of narcotic drugs, unlawful and fraudulent concealment of the same drugs with knowledge of their unlawful importation, unlawfully and knowingly introducing the same drugs into commerce of the United States by fraudulent scheme, and conspiracy to unlawfully import the drugs and to unlawfully and fraudulently conceal them with knowledge of their unlawful importation, and to violate the Harrison Anti-Narcotic Act, and they bring error. Affirmed.

David V. Cahill and Townsend Morgan, both of New York City, for plaintiff in error Webber.

Isaiah Leebove, of New York City, for plaintiff in error Vachuda.

Charles H. Tuttle, U. S. Atty., of New York City (Edward S. Silver, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

MANTON, Circuit Judge. [1–4] This indictment of six counts charged violations of subdivision C, § 2, of the Act of May 26, 1922 (42 Stat. 596), amended June 7, 1924 (43 Stat. 657 [Comp. St. § 8801; 21 USCA § 174]); sections 591–593 (b) of the Tariff Act of 1922 (Comp. St. §§ 5841h10–5841h13; 19 USCA §§ 493, 495–497); section 1 of the Act of December 17, 1914 (38 Stat. 785, as amended [Comp. St. § 6287g]); and section 37 of the United States Criminal Code (Comp. St. § 10201; 18 USCA § 88). A severance as to counts 4 and 5 was granted, and a conviction had on the remaining counts. The total sentence Vachuda must serve is 8 years; Webber must serve 14 years. The first count charged unlawful importation of narcotic drugs; the second, unlawful and fraudulent concealment of the same drugs with knowledge that they had been unlawfully imported into the United States; the third count, with unlawfully and knowingly introducing into the commerce of the United States the same drugs by a fraudulent scheme; the sixth count, a conspiracy to commit the substantive offense as set forth in counts 1 and 2 and to violate section 1 of the Harrison Anti-Narcotic Act (38 Stat. 785, as amended by 40 Stat. 1130, as re-enacted by 42 Stat. 298 [Comp. St. § 6287g; 26 USCA § 211]).

The plan formulated and executed by the plaintiffs in error consisted of importing five cases of heroin and morphine as bowling balls and pins for transshipment to Kobe, Japan. Other cases, five in number, similar in size, weight, and description, in point of fact containing bowling balls and pins, were prepared at No. 87 Walker street, New York City. The imported five cases were taken to this address, and there a substitution of the other five cases actually containing the bowling balls and pins was made, and the five cases of narcotics were retained at that address. The plaintiff in error Vachuda made an effort to lease the sixth floor of 87 Walker street under the alias of William Fox, as president of the American Novelty Company. His references were unsatisfactory. Thereupon he told the lessors that William J. Kern (which was an alias for plaintiff in error Webber) would take the lease. The lease was signed "William J. Kern." Thereafter Vachuda was known as Fox about the building, and Webber was known as Kern. Both were at the place about once or twice a week. On the occasion of Webber's first visit to the building, Vachuda stated to the superintendent of the building that Webber (known as Kern) was the "boss."

The arrest of the plaintiffs in error took place on June 12, 1926, and on that day Webber was at the premises about 20 minutes. On leaving, he told the superintendent that he would be back in half an hour. In the meantime, the boxes arrived and Vachuda and others were engaged in unloading them when the government agents appeared. Vachuda, upon being questioned, stated that he was but a workman there, and that his employer was a man named "Wessman," whom he described unsatisfactorily, and who has never made an appearance in the case. He said he did not know who paid him. He was then searched, and a chauffeur's license bearing the name William Vachuda was found, and he admitted this to be his correct name. Two codes used in the operation of the business were also found upon his person. While this was going on, the telephone bell rang, and Vachuda answered the telephone and said, over the telephone, that he had not finished marking the cases, and hung up. When asked what the telephone message was, he stated the party at the other end asked him what was the delay in sending out the cases.

Later the telephone bell rang again and Vachuda answered. The government agent requested him to "ask the party on the other end to come up," but Vachuda said he would not come up, but would meet them at Broadway and Walker street, "outside the cigar store." Then the agent asked who was at the other end, and Vachuda replied, "the boss." Later the agent proceeded west on Broadway with Vachuda and met plaintiff in error Webber. Webber asked the agent who he was, and he told him he was a government officer. The agent asked Webber what he was doing, and he said, "Just out for a walk." When asked where he lived, he stated, "On Twenty-Third street." (In truth he lived at the Hamilton Hotel on Seventy-Third street, New York City.) Later he was placed under arrest. He was identified by the superintendent and by Vachuda as the man known as Kern. His lawyer appeared on the premises before the men were placed under arrest and taken away.

At 87 Walker street there were no paraphernalia, books, or files that might be regarded as used in a legitimate business. One of the codefendants, who was found guilty, but who has not sued out a writ of error, typed letters and necessary documents to enable the custom brokers to arrange for the shipment of the five cases of bowling balls and pins, ostensibly for transportation from New York to Kobe, Japan, at the office of the trucking company which transferred the boxes. These, as a matter of fact, contained the morphine and heroin. The brokers arranged for the transshipment on the morning of July 12th, and the truckman was directed to pick up the cases at Pier 58 North River, pass through Walker street, and deliver them at No. 87, and there pick up five cases to be taken to Pier 4, Bush Terminal.

One of the codes found upon Vachuda when arrested consisted of 25 pages, and was such as might be used in an ordinary private business code. An application for a cable address was signed by Vachuda, and he gave his home address as 312 East Seventy-Third street, New York City. A cablegram sent to "Jamajor, New York," was forwarded to James Major at Vachuda's address. This was deciphered and stated:

"Berlin Jamajor New York James Major 312 East 73rd St. Goods left on steamer Arabic. Marks are as follows on each case C. A. B. Numbers are as follows on each case: 225, 226, 227, 228 and 229. Weight of each case in consecutive order are as follows: 243, 243, 245, 245, 245. Sizes of each case in consecutive order are as follows: 27–29–31, answer required."

At Vachuda's home, on the letter box, were the names Kern and Major. These were pulled off the letter box the day a newspaper article appeared with reference to this arrest. At the Hotel Hamilton, Webber's room number was 316 from August, 1924, to August, 1926. There were telephone calls connecting this room number to Vachuda's home and to the trucking company which made the delivery in question; one on the day of the arrival of the cases of narcotics on the steamship Arabic. Vachuda admitted on cross-examination that, under the name of Charles Cook, he opened a bank account and deposited large sums of money. It was also proved that Webber was known as Charles Jonas at another hotel. There is evidence that the check given in payment of the rent at 87 Walker street was written in Webber's hand.

The defense offered evidence tending to show one Wessman, who could not be found, was responsible for this business and carried it on. Webber did not testify in his own behalf.

[5] This testimony was sufficient to present a jury question as to the connection of Webber and Vachuda with the crimes of which they have been convicted, and the finding of the jury was supported by the trial judge's denial of the motion to set the verdict aside at its rendition. We cannot interfere with the

jury's verdict, if there is evidence as to each of the plaintiffs in error which required its submission to the jury. We think there was, and their guilt is amply established.

[6] Error is assigned because of a ruling on the admission of testimony. A government agent, while testifying, was asked as to the telephone conversation referred to:

"Q. What did he say?

"Mr. Snitkin: I object to it, so far as it affects the defendant Webber, upon the ground it is incompetent, irrelevant, and immaterial, and hearsay, and in no wise binding upon him.

"The Court: Objection overruled.

"Mr. Snitkin: Exception.

"The Court: Go ahead.

"The Witness: He said, 'The boss.'"

[7, 8] The objection of counsel was restricted to the effect of the testimony upon the plaintiff in error Webber. There was no motion to limit the testimony as to Vachuda, or to instruct the jury that it would have no binding effect upon Webber. If it was inadmissible as against Webber, the failure to instruct the jury as to the limitation, in the absence of a request so to do, does not present reversible error. Silkworth v. United States (C. C. A.) 10 F.(2d) 719; Pappas v. United States (C. C. A.) 292 F. 982. This testimony was admissible as against Vachuda, and the objection to its receipt, based upon the statement, "as far as it affects the defendant Webber," was ineffectual. To exclude it entirely would have been error. The court is not bound to do more than respond to the motion and the objection in the terms in which they are made. Elliott v. Piersol, 1 Pet. 328, 7 L. Ed. 164. In any event, this testimony was cumulative, and no prejudice resulted from it. Webber had been referred to by Vachuda as "the boss" in a reference made as to him to the superintendent of the building. This was made before the conspiracy was at an end.

[9] Error is assigned as to the charge of the trial court, urging that the jury agree upon a verdict, but cautioning them that "each juror is entitled to his own conscientious conviction about the case, and every phase of it, and each juror has the right, and it is his duty, to follow that conviction." What the court said was well within the limits permitted in our decision in Dwyer v. United States (C. C. A.) 17 F.(2d) 696. See, also, Dillon v. United States (C. C. A.) 279 F. 639; Soblowski v. United States (C. C. A.) 271 F. 294; Robinson v. United States (C. C. A.) 290 F. 760.

We have reviewed the arguments of learned counsel who appear for the plaintiffs in error and find no justification for reversing the result below.

Judgments affirmed.

L. HAND, Circuit Judge (dissenting in part): In Amendola v. U. S., 17 F.(2d) 529, we reversed a conviction because of an error not taken by the defendant at all, and altogether irrelevant to his guilt. This we did avowedly because a single sale of morphine had been laid in various counts on which the court imposed cumulated sentences. We said that when this was done we should require the trial to be conducted "with the most scrupulous exactness." It is quite true that we have no power over the sentence as such, but when in fact error has been committed, in weighing it we are charged with the duty of regarding the justice of the result as a whole. No matter how bad the offender, to me it seems intolerable that the maximum punishment imposed by Congress should be evaded by the contrivance of charging a single act in two or three different forms.

In the case at bar the declaration of Vachuda was incompetent against Webber and his attorney objected to its introduction against him for that reason. I do not read Silkworth v. U. S. (C. C. A.) 10 F.(2d) 711, 720, as requiring a motion to limit the testimony in addition to such an objection if the point be clearly raised. Indeed, in Amendola v. U. S., supra, we took the objection nostra sponte. In an ordinary case I should have been content to ignore the error, but not when the defendant has become the victim of what seems to me only verbal juggling.

As to Vachuda I concur; as to Webber I dissent.