**UNITED STATES ex rel. Samuel ROSS, Petitioner-Appellant,**

**v.**

**J. Edwin LaVALLEE, Warden of Clinton State Prison, Dannemora, New York, Respondent-Appellee.**

**No. 1014, Docket 71–1346.**

United States Court of Appeals, Second Circuit.

Argued June 25, 1971.

Decided Sept. 3, 1971.

Robert L. King, Debevoise, Plimpton, Lyons & Gates, New York City, for petitioner-appellant.

Benton J. Levy, Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen. of N.Y., Samuel A. Hirshowitz, First Asst. Atty. Gen., of counsel), for respondent-appellee.

Before SMITH and HAYS, Circuit Judges, and POLLACK, District Judge.[*]

J. JOSEPH SMITH, Circuit Judge:

Petitioner appeals the denial of his petition for a writ of habeas corpus by the United States District Court for the Northern District of New York, James T. Foley, Chief Judge. We find no error and affirm the judgment.

Petitioner was convicted in the State Supreme Court, New York County, in 1964 after a joint trial of selling narcotic drugs. He was sentenced to a term of imprisonment of from five to eight years. The judgment of conviction was affirmed without opinion by the Appellate Division,[1] and permission to appeal to the New York Court of Appeals was denied by Judge Breitel.

The State contends that petitioner has failed to exhaust his state remedies, as required by 28 U.S.C. § 2254(b), since he has failed to employ a remedy specifically established by the New York Court of Appeals for the presentation of a claim such as the one he makes in his petition for habeas corpus. Petitioner's primary assertion is that his right of confrontation under Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), was violated by the introduction into evidence of an admission by his co-defendant which petitioner claims incriminates him. This claim was not raised at trial or on appeal to the Appellate Division, since the Supreme Court had not yet decided Bruton. Petitioner did raise the claim in his application for leave to appeal to the New York Court of Appeals. The New York Court of Appeals, however, has decided that it will consider only issues raised in the court below unless the point was preserved at trial. Telaro v. Telaro, 25 N.Y.2d 433, 306 N.Y.S.2d 920, 255 N.E. 2d 158 (1969).

The New York Court of Appeals did establish a means whereby Bruton claims in cases in which trial was held before the Bruton decision may be presented in state courts. In People v. Pohl, 23 N.Y. 2d 290, 296 N.Y.S.2d 352, 244 N.E.2d 47 (1968), the Court of Appeals indicated that coram nobis was the appropriate means for the presentation of such a challenge. Because of the Pohl decision, the State urges this court to dismiss petitioner's appeal for failure to exhaust his state remedies by applying for coram nobis relief.

It is clear, however, that the exhaustion requirement for federal habeas corpus applies only to direct state appeals, and not to collateral post-conviction relief.[2] Petitioner has presented

---

[*] United States District Judge for the Southern District of New York, sitting by designation.

1. 30 A.D.2d 641, 291 N.Y.S.2d 769 (1st Dept.1968).

2. Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953).

his claim to the State's highest court, and that court has refused to hear that claim. It makes no difference whether or not that court was correct when it refused to hear the claim. All that is necessary for purposes of federal habeas corpus is that the claim have been presented; that the state court did not rule on its merits is irrelevant.[3] Any other conclusion would unduly burden petitioner in his attempts to obtain a federal hearing for his claim. Our decisions in United States ex rel. Sloan v. McMann, 415 F.2d 275 (2d Cir. 1969) and United States ex rel. Smith v. Follette, 405 F.2d 1199 (2d Cir. 1969), relied upon by the State, do not dictate a different conclusion. In both those decisions, petitioners had at no time presented their *Bruton* claims to the state courts on direct appeal. It is necessary, therefore, for this court to reach the merits of petitioner's claims.

■ Petitioner was tried jointly with his brother, Horace Ross. At trial, Police Detective Watson, who arrested both of them, along with a third individual, Charles Jenkins, testified that when he questioned Horace about his selling of narcotic drugs, Horace replied, "Gee whiz, we're just trying to make a few bucks." Petitioner contends that in the context in which it was made, this admission incriminates him, even though it did not refer to him by name. In the District Court Judge Foley concluded that "the testimony of the detective to which petitioner now objects is not the type of 'powerfully incriminating' statements to which the Supreme Court referred in *Bruton*." As to whether this statement was incriminating, we must disagree. Petitioner was arrested with his brother. Given this context, there can be no doubt that his brother's reference to "we" included petitioner. In this sense, the admission was damaging to petitioner's cause. Though petitioner was not mentioned by name, we have little doubt that he was incriminated by his brother's admission.

■■ The Supreme Court has clearly indicated, however, that improper admissions of a co-defendant in contravention of *Bruton* may constitute harmless error. Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). An error will be considered harmless if there exists no reasonable doubt that absent commission of the error the evidence against the defendant was so overwhelming that the jury would have convicted in any case. Chapman v. California, 386 U.S. 18, 25, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Here, we must agree with Judge Foley that there existed such overwhelming independent evidence against petitioner that any *Bruton* error was harmless.

The main witness for the prosecution at trial was female Detective Robbie Williams. She testified that she had acted as an undercover police agent, posing as a narcotics addict to make purchases of narcotics and gain information. On August 21, 1963, she and another female went to Mike's Bar on 7th Avenue and 143rd Street in New York City. They went by taxicab to the vicinity of the Blue Moon Bar, 123rd Street and Park Avenue, where they were joined by three other women. Petitioner and his brother, petitioner driving, drove up to the women, got out of the car, and Horace Brown asked Detective Williams "how many" she wanted, and she replied one, and gave him $73. The women were told to go to another location, where the two brothers drove up two hours later. Both defendants spoke to the women, and Horace directed them to go to still another location. At this third location Detective Williams was directed to packets of heroin. Detective Watson, who had been observing the contacts between the women and the defendants, testified that he saw petitioner in a conversation with two other girls in the group and observed "hand motions be-

3. See "Development in the Law—Federal Habeas Corpus," 83 Harv.L.Rev. 1038, 1096 (1970).

tween him and another girl in the group." It appears to be true, as petitioner contends, that no direct evidence of narcotics handling was presented against him. Circumstantial evidence may be powerful, however, and it seems apparent that it was here. There was no doubt that petitioner's brother was involved in the sale of narcotics, according to the direct testimony of Detective Williams. It also was clearly established that petitioner himself was closely aligned with his brother during all the narcotics transactions. Detective Watson observed him exchanging something with members of the group purchasing narcotics from petitioner's brother. In light of this evidence, there is no reasonable doubt as to the jury's verdict of guilty, even without the incriminating admission of petitioner's brother.

Petitioner also argues that he was denied his Sixth Amendment right of effective representation because he and his brother were jointly represented by the same attorney. It is contended that because of the difference in the degree of proof against the two defendants, a conflict of interest arose which prevented proper representation. It appears true that the State's evidence against petitioner's brother was more voluminous than that against petitioner himself. This fact alone, however, is insufficient to establish a conflict of interest of the magnitude necessary under the law of this circuit to support a claim of inadequate representation.[4] The existence of any conflict of interest because of the disparity in evidence is purely speculative.

The judgment of the District Court denying and dismissing the petition is affirmed.

HAYS, Circuit Judge (concurring):

The evidence against Samuel Ross, aside from the statement the admissi-

bility of which is contested, does not seem to me to be "so overwhelming that * * * violation of *Bruton* was harmless beyond a reasonable doubt * * *." Harrington v. California, 395 U.S. 250, 254, 89 S.Ct. 1726, 1728, 23 L.Ed.2d 284 (1969). I agree with the district court judge that Horace Ross's statement was not "powerfully incriminating" under the *Bruton* rule and my concurrence rests on that ground.

---

4. United States v. Lovano, 420 F.2d 769, 773 (2d Cir.), cert. denied, 397 U.S. 1071, 90 S.Ct. 1515, 25 L.Ed.2d 694 (1970): "The rule in this circuit is that some specific instance of prejudice * * *

resulting from a joint representation must be shown to exist before it can be said that an appellant has been denied the effective assistance of counsel."