**UNITED STATES of America,
Appellee,**

v.

**Anthony M. SIRAGUSA, Appellant.
No. 2, Docket 71–1426.**

United States Court of Appeals,
Second Circuit.

Submitted Sept. 13, 1971.

Decided Nov. 1, 1971.

Joseph E. Brill, New York City (John
L. Pollok, New York City, of counsel),
for appellant.

Whitney North Seymour, Jr., U. S. Atty., for Southern District of New York (Ross Sandler and Peter F. Rient, Asst. U. S. Attys., of counsel), for appellee.

Before MOORE, SMITH and HAYS, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

This is an appeal from a final judgment of the United States District Court for the Southern District of New York, Dudley B. Bonsal, Judge, convicting appellant, Dr. Anthony Siragusa, after a six-day jury trial, on three counts of evasion of personal federal income tax for the calendar years 1962, 1963 and 1964, in violation of 26 U.S.C. § 7201. Appellant was sentenced to 30 days imprisonment on each count, to be served concurrently, and was ordered to pay a fine of $5,000 on counts one and three, and $1,000 on count two, that is, $11,000 plus the costs of prosecution. Execution of sentence was stayed pending appeal. At the same trial, appellant was acquitted of three counts of filing a false tax return for the calendar years 1962–64. We find no reversible error and affirm the judgment.

Using the bank deposits method of proving tax evasion, the government introduced evidence to show that appellant received more money from professional fees and interest on savings bank deposits than he had reported on his tax returns during the years in question. Summing up the information the government had obtained from the numerous banks at which appellant had deposits, from a former employee of appellant, and from appellant himself, a revenue agent calculated the deficiency in tax due to be $3,956.29 for 1962, $900.14 for 1963, and $2,209.48 for 1964. The appellant does not contest the fact that the amounts on the tax returns may be in error. He claimed that, of his and his wife's 23 savings accounts, some

were inactive during those years, and the passbooks were not presented for the recording of accrued interest. He also claimed that he was hurried in filling out the tax returns and that he estimated the amount of interest and fees to cover that income for which he did not have exact figures. The government introduced evidence which raised doubt about the sufficiency of these explanations.

The main issue, then, was one of knowledge and wilfullness: did Dr. Siragusa know that he reported less than his income for those years, and did he wilfully evade his full tax responsibility? After two and a half days of testimony, the jury began deliberating late on a Thursday afternoon. When they did not come to agreement by 6:00, the court, with the consent of counsel, allowed them to disperse for the night, cautioning them not to discuss the case with anyone. The jury resumed deliberations on Friday, and at 4:45 indicated that they were unable to reach a verdict on any of the counts. After a further unsuccessful attempt to come to some agreement that afternoon, a majority indicated that continued discussion might be productive, and they were requested by the court to return on Monday to deliberate further. This action was taken over objection of defense counsel, who argued that the jury ought not be separated for such a length of time, particularly after they had indicated a repeated inability to agree on any verdict.

The jury met on Monday and at about 4:00 p. m., they announced that they had found Dr. Siragusa guilty of three counts of tax evasion and not guilty of three counts of filing false returns.

When counsel reappeared on the date set for sentencing, the court revealed that after the jury had been dismissed, his law clerk had found a 1970 Federal Income Tax Booklet in the jury room.[1] Both counsel agreed that the booklet had

---

1. This is a booklet sent out in the millions by the Internal Revenue Service to inform taxpayers on how to fill out their returns.

not been put into evidence. A pencil mark bracketed a portion of the book which said:

> You must report any interest you received or which was credited to your account (whether entered in your passbook or not) and which you can withdraw.

Appellant's motion for a new trial based on the prejudicial nature of this non-evidentiary, hearsay material was denied, as was a motion for a hearing to examine the jury on the presence of the booklet and their use of it in their deliberations. The denial was based on the fact that the substance of the information in the circled area had been entered in evidence at the trial.

■ Appellant raises several points on this appeal. His main contention is that the introduction of non-evidentiary material into the jury room, through no fault of appellant, vitiates the verdict in the case and calls for a new trial. He also claims that a hearing on the circumstances surrounding the presence of the booklet ought to have been held by the court. Further, in this connection, he claims that the failure to sequester the jury over the weekend while it was in the midst of deliberation was the cause of the introduction of the extraneous material, presumably by one of the jurors anxious to persuade a hesitant fellow-juror.[2]

The rule that nothing which has not been introduced into evidence may go to the jury room is fundamental. However, the court below found that the booklet had no prejudicial effect because the information in the marked section had been introduced into evidence during the trial, and we agree. It added nothing to the evidence and instructions already before the jury.

■■ The claim that the failure to sequester led to the difficulty here raises primarily a question of whether the court abused its discretion in allowing the jury to disperse for the weekend. The trial court has wide discretion in such a matter to decide, depending on the nature of the case, whether to keep the jury together.[3] While the court here might have ruled otherwise than to ask the jury to return after a day and a half of deliberation and several communications regarding their inability to agree on any count, we cannot say that it was an abuse of discretion to do as he did in view of the time and effort already spent, and the fact that it was not a sensational trial or notorious defendant likely to arouse great public interest and danger of outside pressures.

■ The other issues raised by appellant do not merit reversal. His second claim is that the evidence on the second count of tax evasion was insufficient to warrant sending it to the jury or sustaining a verdict of guilty. This seems to be a claim that the amounts in question were so small and the possibility that the appellant might not have been informed by his banks so great that a reasonable man would have to have a reasonable doubt about his guilt. In this case, the credibility of defendant's explanations to the agents, the inferences the jury had to draw about knowledge and wilfullness from the conflicting evidence, and the fact that there was a willful pattern in appellant's behavior over the three-year period, created a situation in which the conclusion of the fact-finder is particularly to be respected. There was surely enough to go to the jury. If the jury believed that there was a pattern and that appellant's behavior was willful, the fact of the

2. There were two jurors who felt, on Friday afternoon, that agreement on the case would be impossible; one of them was a woman who lived 88 miles from the courthouse and was anxious for the trial to be concluded.

3. United States v. Breland, 376 F.2d 721 (2d Cir. 1967); United States v. Acuff, 410 F.2d 463 (6 Cir. 1969), cert. denied, 396 U.S. 830, 90 S.Ct. 82, 24 L.Ed.2d 81 (1969). Appellant cites some cases going the other way. However, some are earlier than the *Breland* case and others involve threats or crimes of violence and attendant publicity.

smaller amount of deficiency in 1963 is unimportant, as long as it was found by them and can reasonably be seen as substantial.

The third contention is that the court erred in not charging the jury with the "two-inferences" charge. That is, essentially, that when facts and circumstances proven are susceptible of two inferences, one pointing to innocence and the other to guilt, the jury must adopt the one pointing to innocence. This charge was common many years ago, but the Supreme Court, in Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954), held that it was not essential for the trial court to charge that in order to justify a conviction, where the evidence is circumstantial, it must be such as to exclude every reasonable hypothesis other than guilt, or in other words, that if an inference of innocence is possible, it must be believed. Although some circuits have persisted in using or approving this charge, this circuit has not departed from *Holland.*[4] There was no error in the court's refusal so to charge. The judgment is affirmed.

---

4. United States v. Tutino, 269 F.2d 488, 490 (2d Cir. 1959); United States v. Woodner, 317 F.2d 649, 651 (2d Cir.), cert. denied, 375 U.S. 903, 84 S.Ct. 192, 11 L.Ed.2d 144 (1963); United States v. Marchisio, 344 F.2d 653, 662 (2d Cir. 1965).