**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Daniel Lee RUCKER and Eugene C. Smith, Defendants-Appellants.**

**Nos. 924, 925, Dockets 77–1478, 1479.**

United States Court of Appeals, Second Circuit.

Argued May 23, 1978.

Decided Sept. 28, 1978.

Eugene Welch, Asst. U. S. Atty. (Richard J. Arcara, U. S. Atty., W. D. New York, Buffalo, N. Y.), for plaintiff-appellee.

Michael R. Wolford, Rochester, N. Y., for defendant-appellant Eugene C. Smith.

David G. Larimer, Rochester, N. Y., for defendant-appellant Daniel Lee Rucker.

Before OAKES, Circuit Judge, BLUMENFELD, Senior District Judge,* and MEHRTENS, Senior District Judge.**

* Sitting by special designation from the District of Connecticut.

** Sitting by special designation from the Southern District of Florida.

MEHRTENS, Senior District Judge:

The defendants, Daniel Lee Rucker and Eugene C. Smith, appeal from convictions on a four-count indictment charging Rucker in Count I with entering a federally insured bank with intent to take by force and violence money belonging to the bank, in violation of 18 U.S.C. § 2113(a) and Section 2, and in Count III charging him with conspiracy to commit bank robbery, in violation of 18 U.S.C. § 371. Count II charged Rucker and Smith with entering with intent to commit a bank robbery, in violation of 18 U.S.C. § 2113(a) and Section 2, while Count IV charged Rucker and Smith with conspiracy to commit bank robbery, in violation of 18 U.S.C. § 371.

Finding no merit in their numerous asserted errors, we affirm.

### Smith's Motion for a Separate Trial on Counts II and IV and Admission of Rucker's Prior Conviction

Smith asserts that it was improper for the trial court to deny his motion for a separate trial of Counts II and IV of the indictment while Rucker contends that the admission of evidence of his prior conviction was error.

The four-count indictment arose out of two separate bank robberies. Counts I and III charged only Rucker with the robbery of, and conspiracy to rob, the Marine Midland Bank. Counts II and IV charged Rucker and Smith with the robbery of, and conspiracy to rob, the First National Bank. Some time prior to trial both defense counsel reviewed the government's file, including the criminal records of both Rucker and Smith. Three days before trial the government disclosed its intention to offer in evidence Rucker's prior conviction for robbery of the same Marine Midland Bank.

Some time after the selection of the jury on October 17 and before the start of testimony on October 24, Smith moved for a separate trial on Counts II and IV, that is, the First National Bank robbery. He wanted a separation of counts, but not defendants. Smith was willing to be tried with Rucker on the First National Bank charges but wanted a severance from Rucker on the Marine Midland Bank charges. His reason was that he would be prejudiced by the government's use of Rucker's prior conviction.

Smith does not contend, as indeed he could not, that the joinder of the counts was not permissible under Rule 8, Fed.R. Cr.P. This claim must of necessity be based upon Rule 14, Fed.R.Cr.P. which empowers the court to grant severance to a defendant who will be prejudiced by a joinder of defenses or defendants. The matter is addressed to the discretion of the trial court and a conviction will be reversed only if the refusal of the trial court to grant relief was a clear abuse of discretion. *Opper v. United States*, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954); *United States v. Aviles*, 274 F.2d 179 (2d Cir.), *cert. denied*, 362 U.S. 974, 80 S.Ct. 1057, 4 L.Ed.2d 1009 (1960); *United States v. Lebron*, 222 F.2d 531 (2d Cir.), *cert. denied*, 350 U.S. 876, 76 S.Ct. 121, 100 L.Ed. 774 (1955). The burden is upon a moving defendant to show facts demonstrating that he will be so severely prejudiced by a joint trial that it would in effect deny him a fair trial. The defendant must demonstrate that he suffered such prejudice as a result of the joinder, not that he might have had a better chance for acquittal at a separate trial. *United States v. Borelli*, 435 F.2d 500 (2d Cir. 1970), *cert. denied*, 401 U.S. 946, 91 S.Ct. 963, 28 L.Ed.2d 229 (1971); *United States v. DeSapio*, 435 F.2d 272 (2d Cir. 1970), *cert. denied*, 402 U.S. 999, 91 S.Ct. 2170, 29 L.Ed.2d 166 (1971).

Smith failed to sustain that burden. The fact that evidence may be admissible against one defendant but not against others does not require separate trials. *United States v. Hoffa*, 349 F.2d 20 (6th Cir. 1965), *aff'd*, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966). Rucker's prior conviction would have been admissible in the First National Bank trial if the severance had been granted because it tended to show his motive, intent, knowledge, and a plan or design as a co-conspirator on both banks.

In a prosecution for conspiracy an individual defendant is not entitled to a separate trial upon the ground that he would be unable to obtain a fair trial in the company of defendants who had pled guilty to a separate indictment and also with a defendant who had a criminal record. The court in *United States v. Stracuzza*, 158 F.Supp. 522 (S.D.N.Y.1958), held that "These facts alone are not sufficient to warrant the granting of a severance," *aff'd sub nom. United States v. Schaffer*, 266 F.2d 435 (2d Cir. 1959), *affirmed*, 362 U.S. 511, 80 S.Ct. 945, 4 L.Ed.2d 921 (1960). In *United States v. Robinson*, 503 F.2d 208 (7th Cir. 1974), the court, in passing upon a similar contention, stated:

> * * * Robinson's allegation that the testimony relating to Taylor's criminal record and narcotics activity prejudiced him is not sufficient to make out a showing of prejudice warranting severance.
> * * *

*See also: United States v. Campanile*, 516 F.2d 288 (2d Cir. 1975); *United States v. Benedetto*, 571 F.2d 1246 (2d Cir. 1978); *United States v. Brozyna*, 571 F.2d 742 (2d Cir. 1978); *United States v. Hayes*, 553 F.2d 824 (2d Cir. 1977); *United States v. Corr*, 543 F.2d 1042 (2d Cir. 1976), holding that evidence as to a prior bank robbery is plainly admissible to show a *modus operandi; United States v. Viruet*, 539 F.2d 295 (2d Cir. 1976); *United States v. Cavallino*, 498 F.2d 1200 (5th Cir. 1974).

Smith's argument is without merit. Under a long line of cases and under new Fed.R.Evid. 404(b) the court did not abuse its discretion. There was a sufficient parallel between the acts charged in the indictment and Rucker's prior conviction so that it had real probative value regarding *modus operandi* and Rucker's willingness and intent to enter into the conspiracies. *See United States v. Bermudez*, 526 F.2d 89 (2d Cir. 1975). Rucker's prior conviction would be admissible as to Rucker on both bank robberies even if the severance had been granted and hence Smith cannot now complain. *See United States v. Turbide*, 558 F.2d 1053, 1061 (2d Cir. 1977).

The district judge carefully weighed the probative value against the danger of unfair prejudice and admitted the evidence. His exercise of discretion was not arbitrary or irrational, the standard adopted in this circuit when reviewing a trial court's decision under Rule 403 Fed.R.Evid. *United States v. Robinson*, 560 F.2d 507 (2d Cir. 1977). The trial judge adequately protected Smith with cautionary instructions to the jury during opening argument, also when the evidence was actually introduced, and in his final charge to the jury.

On this record containing substantial evidence of Smith's guilt, we are convinced beyond a reasonable doubt that the jury would have reached the same verdict had Smith been tried separately with Rucker on Counts II and IV and, therefore, his trial with Rucker on all counts was not error. *Cf. United States ex rel. Ross v. LaVallee*, 448 F.2d 552 (2d Cir. 1971). We further hold the trial court did not err in admitting evidence of Rucker's prior conviction.

### The Court's Instructions

■ Smith's and Rucker's contention that the trial court's instruction on the interest of the defendant was reversible error because it did not have balancing language to the effect that "A defendant's vital interest in the outcome of the trial was not inconsistent with the ability to render truthful testimony" is not sufficient to present reversible error. Their reliance upon *United States v. Martin*, 525 F.2d 703 (2d Cir. 1975) and *United States v. Floyd*, 555 F.2d 45 (2d Cir. 1977) is misplaced. In *Martin* the court's instruction containing that language was approved. In *Floyd* this court found an instruction similar to that here given to be adequate, although the opinion did state that it was preferable to balance such an instruction with a charge that "A defendant's vital interest in the outcome of his trial is not inconsistent with the ability to render truthful testimony." At no time have we ever specifically defined a required instruction on the interest of the defendant to be considered by the jury in evaluating his credibility.

Aside from the failure of both counsel to object to the charge as required by Fed.R. Cr.P. 30, pointing out their specific objection to the court's leaving out the words "that his vital interest is not inconsistent with his ability to render truthful testimony," the instruction as given by the court was in accordance with those which have repeatedly been approved by us. *United States v. Martin, supra; United States v. Tyers,* 487 F.2d 828 (2d Cir. 1973); *United States v. Sclafani,* 487 F.2d 245 (2d Cir.), cert. denied, 414 U.S. 1023, 94 S.Ct. 445, 38 L.Ed.2d 313 (1973); *United States v. Mahler,* 363 F.2d 673 (2d Cir. 1966); *United States v. Sullivan,* 329 F.2d 755 (2d Cir.), cert. denied, 377 U.S. 1005, 84 S.Ct. 1943, 12 L.Ed.2d 1054 (1964). The trial court's instruction on the credibility of a defendant as a witness was not improper, and, particularly in the context of the entire charge, was not prejudicial, unfair or misleading.

■ Both Smith and Rucker contend that the court's instruction on fabrication of evidence as consciousness of guilt was reversible error. Again, counsel objected only to the necessity for giving this charge and not to the specific wording that the court used in the charge. The charge was appropriate in view of the evidence that Smith had presented a false alibi and that Rucker attempted to bribe a witness to appear in court and give false testimony in his behalf. The trial judge here instructed the jury that the defendants' statements could be *used in determining* the defendants' guilt or innocence; more specifically, that the jury could consider "whether this circumstantial evidence points to a consciousness of guilt." There was no error in giving this instruction.

■ Smith also contends that it was reversible error for the court to have failed to give a specific instruction on an immunized witness' testimony. The trial court did, however, give an instruction as to an accomplice's testimony. Under the facts here, the defendants were not entitled to both an immunized witness instruction and an accomplice instruction, and have no complaint where the charge requested and the charge given are in substance identical.

■ Smith, without citing any authority, asserts that he was entitled to an instruction charging that if the jury views the evidence in the case as reasonably permitting either of two conclusions, one of innocence, the other of guilt, the jury should adopt the conclusion of innocence. The decisions in this circuit have established that a defendant is not entitled to this type of instruction. *United States v. Turbide, supra; United States v. Siragusa,* 450 F.2d 592 (2d Cir. 1971).

The defendants' objections to the court's instructions are without merit.

### Sufficiency of Evidence against Smith

■ Smith claims that the evidence was insufficient to sustain his conviction. It is not for this court to weigh the evidence or to determine the credibility of witnesses; the verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the government to support it. *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

The evidence demonstrated that Smith actually came to Brown's house that morning to get Brown to rob the bank; that Smith stored the proposed robbery gun; that Smith prepared the demand note and placed it in an envelope; that Smith walked the bicycle that Brown was to use as a getaway vehicle, past the bank that was to be robbed; that Smith participated in the planning of the robbery; that Smith received some of the proceeds of the robbery from Brown at the Gold Circle Store after the robbery; that Smith was seen counting the money that afternoon in the basement of his home. In addition, Smith attempted to present a false alibi, asserting that on the day of the First National Bank robbery he went to see his drug counselor, whereas the drug counselor specifically testified that Smith did not see him on either September 28 or September 29, as Smith had testified he did.

Upon reviewing the entire record, we are left with no question but that there was

ample evidence before the jury upon which to find Smith guilty.

### Sufficiency of the Evidence on Specific Intent

▮ Rucker argues that the evidence was insufficient to convict him on Count I, entering the Marine Midland Bank with intent to commit a felony, that is, bank robbery, in violation of 18 U.S.C. § 2113(a) and Section 2. He asserts that the evidence was insufficient because on cross-examination defense counsel got the accomplice Roberto Rivera to say that he merely entered the bank out of fear of Rucker and did not want to take any money from the bank; that, therefore, since Rivera would not admit having the intent to rob the bank when he entered it, Rucker cannot be convicted of aiding and abetting that entry with intent.

There was ample evidence showing that both Rucker and Rivera had the specific intent that Rivera rob the bank when he entered it. Even if Rivera did not have the specific intent to rob the bank, Rucker clearly did and, therefore, he is criminally responsible for having someone else do the actual act of entering the bank, while Rucker had the intent that that person rob the bank. The critical factor was Rucker's intent and the evidence clearly demonstrated that Rucker intended that when Rivera entered that bank he would rob it. The evidence was ample for a jury to convict Rucker under Title 18, U.S.C. Section 2(a) or 2(b).

> Section 2(b) merely "removes all doubt that one who puts in motion or assists in the illegal enterprise or causes the commission of an indispensable element of the offense by an innocent agent or instrumentality is guilty." . . . The statute makes it "unnecessary that the intermediary who commits the forbidden act have a criminal intent." *United States v. Rapoport*, 545 F.2d 802, 806 (2d Cir. 1976).

### Denial of Daily Copy of Transcript

▮ There is no merit in Smith's contention that he was denied a right to a fair trial because the court refused his request for a daily copy of transcript of the testimony of two accomplices, Rivera and Brown.

Defense counsel were assigned pursuant to 18 U.S.C. § 3006A(a), which clearly vests the district court with discretion to decide whether such things as daily copy are necessary for an adequate defense. The defendant has cited no authority in support of his contention. In *United States v. Kaufman*, 393 F.2d 172, 176 (7th Cir. 1968), apparently the only case dealing with this matter, the court said:

> Appellant contends the trial court violated his Sixth Amendment rights by denying his motion for preparation of a daily transcript of the evidence for his use during the trial. He cites no case recognizing such a right, and we have discovered none. Appellant and his attorney were, of course, present throughout the trial. We find no constitutional deprivation here.

This was a relatively short trial, lasting only four days. Defense counsel had all of the accomplice witnesses' prior testimony and statements, and diligently exploited inconsistencies therein in cross-examination and summation. Smith has not shown any prejudice suffered as a result of the denial of the daily copy. The refusal of the trial court to order daily copy for the defendants was not an abuse of discretion, nor did it violate the defendants' right to a fair trial.

### Admission of Rene Rivera's Hearsay Testimony

Rucker asserts that the trial court erred in allowing Rene Rivera to testify about his conversation with his brother Roberto Rivera, a co-conspirator.

The testimony challenged is the statement of the witness Rene Rivera that "he (Roberto Rivera) told me Danny (Rucker) had told him to put the clothes in a bag and throw them out." The defendants contend that because this statement repeats a prior statement, the first statement, and also the second statement reporting it, are inadmissible hearsay. The inner statement, re-

peated to the witness Rene by Roberto, is "put the clothes in a bag and throw them out." This statement was properly offered against Rucker as an admission of a conspirator. The second statement is "Danny (told me) to put the clothes in a bag and throw them out."

The government contends that this was admissible because under Fed.R.Evid. 801(d)(2)(E) which provides that A statement is not hearsay if the statement is offered against a party and is a statement by a coconspirator of a party during the course [of the conspiracy] and in furtherance of the conspiracy. The statement is offered against a party, the defendant Rucker, and is a statement by a co-conspirator, Roberto Rivera.

The specific objection by counsel was that Roberto Rivera had withdrawn himself from any conspiracy prior to the statement. Although there is no merit to the specific objection as such, two preliminary determinations made by the trial judge under Rule 104(a) Fed.R.Evid. must be examined.

The first is whether the statement was made during the course of the conspiracy to rob the bank, and the second is whether the statement was made in furtherance of the conspiracy.

Once a conspiracy is shown to exist, which in its nature is not ended merely by lapse of time, it continues to exist until consummated, abandoned or otherwise terminated by some affirmative act. Every act in furtherance of the conspiracy is regarded in law as a renewal or continuance of the unlawful agreement, and the conspiracy continues so long as overt acts in furtherance of its purpose are done. *Perry v. State*, 23 Ill.2d 147, 177 N.E.2d 323, *cert. denied*, 369 U.S. 868, 82 S.Ct. 1035, 8 L.Ed.2d 86 (1962); *United States v. Green*, 523 F.2d 229 (2d Cir. 1975), *cert. denied*, 423 U.S. 1074, 96 S.Ct. 858, 47 L.Ed.2d 84 (1976). In *Krulewitch v. United States*, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790 (1949), the court restricted out-of-court statements of one conspirator against another conspirator to those statements made during the time the "central aim" of the conspiracy existed.

Even though a crime may have been committed, the conspiracy does not necessarily end; it continues until its aim has been achieved, it has been abandoned, or otherwise terminated. The "central aim" of the conspiracy was to rob the bank. Although Roberto Rivera entered the bank, he became frightened and fled the bank without actually presenting the demand note to the teller. This abortive attempt, however, did not terminate the basic conspiracy to rob the bank.

Defendant's reliance upon *United States v. Floyd*, 555 F.2d 45 (2d Cir. 1977), is misplaced. In that case the central criminal purposes of the conspiracy, unlike here, had been attained by the successful robbery of the bank and this court held that a statement thereafter made by a co-conspirator to a non-conspirator was not admissible because the conspiracy had terminated. The court also held that the admission of the hearsay statement was harmless error. Here the central criminal purpose of the conspiracy to rob the bank had not been attained but only temporarily frustrated.

Prior to the testimony of Rene Rivera, Roberto Rivera, a co-conspirator, testified that on May 12, 1976 Danny Rucker convinced Roberto to go into the Marine Midland Bank and present the teller with a demand note. When Roberto panicked on May 12th and left the bank, he went to Danny Rucker's house where he had a conversation with Rucker about why the bank robbery attempt did not succeed. Then, on May 14, 1976 Roberto testified that Danny Rucker convinced him to try the bank robbery a second time. Roberto testified that Rucker then gave him a black leather jacket, a white hat and sunglasses to wear in the bank robbery and that Danny Rucker also gave Rivera what looked like a gun to use in the bank robbery. On May 14, 1976 Roberto went into the bank with the jacket, hat, sunglasses, gun and demand note that Rucker had given him. Once inside Roberto became frightened and fled the bank without actually presenting the demand note to the teller. When Roberto fled the bank he ran to his own apartment where

Danny Rucker telephoned him soon after he arrived. Roberto related the instructions that Danny Rucker gave him as to the disposition of the clothes and items that Rucker had previously given to Roberto to use in the bank robbery. Roberto then said that he told his brother Rene to throw these clothes in the incinerator. This testimony established to the satisfaction of the trial court that there was a conspiracy between Rucker and Roberto Rivera and that Roberto's statements to his brother Rene Rivera were statements made during the course of that conspiracy in furtherance of that conspiracy.

That statement, coming within minutes after the attempted robbery, was sufficient to support the trial judge's determination that the conspiracy had not been abandoned and was ongoing at that time.

As to the second question, whether or not the statement was made in furtherance of the conspiracy to rob the bank, the statement was a request for aid. Rene Rivera testified that immediately after the statement was made he took the clothes from Roberto and threw them in the incinerator. From this act it could be inferred that the statement by Roberto Rivera was made within minutes after the aborted robbery attempt to gain Rene Rivera's help in destroying the clothes.

We find that the statement was not "crucial or devastating" to Rucker's case. Roberto Rivera's testimony describing in thorough detail both the planning and the robbery was corroborated by other evidence. Roberto's statements to Rene concerning the destruction of the clothes was in furtherance of the conspiracy to rob the bank. It was made in furtherance of and during the course of the conspiracy, was supported by sufficient independent evidence of conspiracy, and so was properly admitted under Rule 801(d)(2)(E). The statements by Rene were cumulative, repetitive, and corroborated to such a point that we cannot believe that the verdict on the rights of the parties could have been appreciably affected by this reported snatch of conversation.

A complete answer to Rucker's contention, however, is that the error (assuming error was made in the admission of the statement) was harmless. This is a proper case for the application of Rule 52(a) of the Fed.R.Cr.P. The record clearly and conclusively reveals the guilt of Rucker, and we cannot conceive how this one admission could possibly influence the jury to reach an improper verdict. *Brown v. United States*, 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973); *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); *Lutwak v. United States*, 344 U.S. 604, 73 S.Ct. 481, 97 L.Ed. 593 (1953); *United States v. Floyd, supra; United States v. Chieppa*, 241 F.2d 635 (2d Cir.), *cert. denied*, 353 U.S. 973, 77 S.Ct. 1057, 1 L.Ed.2d 1136 (1957); *Vachuda v. United States*, 21 F.2d 409 (2d Cir. 1927).

*Denial of Speedy Trial*

Rucker contends that he was denied his right to a speedy trial under the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*, the Sixth Amendment, Rule 48 Fed.R.Cr.P., and the Western District's Plan for Prompt Disposition of Criminal Cases.

The defendant's claim under Rule 48(b) Fed.R.Cr.P. is coterminous with his Sixth Amendment claim. *See United States v. Singleton*, 460 F.2d 1148 (2d Cir. 1972), *cert. denied*, 410 U.S. 984, 93 S.Ct. 1506, 36 L.Ed.2d 180 (1973); *United States v. Infanti*, 474 F.2d 522, 527 (2d Cir. 1973).

The indictment was filed against Rucker December 2, 1976, and he was arraigned December 6, 1976. The trial began October 17, 1977, slightly less than 11 months after indictment, at which time a jury was selected. After that date Rucker's counsel moved to dismiss the case for lack of a speedy trial. The district judge, although noting that the motion was not timely made, assumed for the sake of argument that it was timely made and conducted a hearing. Thereafter he dictated an opinion order using the balancing test in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), denying the motion. The delay was caused by preparation for

trial, discovery on both sides, and a heavy court docket. This is not a case where the government's lengthy inexplicable delay in the face of demands for a speedy trial was so offensive as to offend the Sixth Amendment. Neither is it a case where the records show any actual prejudice to the defendant as a result of the delay. The institutional delay was not deliberate and did not result from governmental misconduct or negligence. The lapse of time was not excessive, particularly where only a few days imprisonment was involved. Not until the trial had started did the defendant assert his desire for a speedy trial, which he now urges has been thwarted. Under paragraph 11(c) of the Western District's Plan for the Prompt Disposition of Criminal Cases, the failure of the defendant to move for dismissal prior to trial constituted a waiver of the right to dismissal. A similar waiver provision is provided in the Speedy Trial Act, 18 U.S.C. § 3162(a)(2): "Failure of the defendant to move for dismissal prior to trial * * * shall constitute a waiver of the right to dismissal under this section." There was therefore no error in the district court's denial of Rucker's motion to dismiss the case for denial of a speedy trial.

The convictions of Rucker and Smith are affirmed.

OAKES, Circuit Judge (concurring):

I concur in the court's thorough opinion. I write only with respect to the general objection to that portion of the charge relating to credibility generally and the interest of the defendant particularly. To my mind such a charge, absent the balancing language approved in *United States v. Martin*, 525 F.2d 703 (2d Cir.), *cert. denied*, 423 U.S. 1035, 96 S.Ct. 570, 46 L.Ed.2d 410 (1975), and suggested as "preferable" in *United States v. Floyd*, 555 F.2d 45, 47 n.4 (2d Cir.), *cert. denied*, 434 U.S. 851, 98 S.Ct. 163, 54 L.Ed.2d 120 (1977), to the effect that a defendant's vital interest in the outcome of his trial is not inconsistent with his ability to render truthful testimony, is erroneous, prejudicial, and, in a close case hinging on defendant's credibility, devastating.

Here, however, defense counsel made no objection specifically calling the trial judge's attention to the omission of the balancing language; and because our court in *Floyd, supra*, used language that was only precatory in nature, I find it difficult to hold such omission reversible error here. Because Judge Platt and a few other district judges have evidently used the charge given here, I would simply recall attention to the preferability language of the note in *Floyd, supra*. Speaking only for myself, I would not be adverse, as to trials occurring hereafter, to reversal on the basis of such an omission. I am reminded of Judge Frank's view that precatory language of the court of appeals condemning error that nevertheless results in affirmance is "purely ceremonial" in nature. *United States v. Antonelli Fireworks Co.*, 155 F.2d 631, 661 (2d Cir.) (Frank, J., dissenting), *cert. denied*, 329 U.S. 742, 67 S.Ct. 49, 91 L.Ed. 640 (1946).