**UNITED STATES of America,**

v.

**James PETRONE, Daniel Milano, and Joseph Cunzio, Defendants.**

**No. 79 Cr. 772.**

United States District Court,
S. D. New York.

Jan. 7, 1980.

Robert B. Fiske, Jr., U. S. Atty., S. D. New York, New York City, Stuart J. Baskin, Asst. U. S. Atty., New York City [of counsel].

Linda Fraser, New York City, for defendant James Petrone.

George David Rosenbaum, New York City, for defendant Daniel Milano.

Leon B. Polsky, New York City, John P. Curley, New York City, [of counsel], Federal Defender Services Unit The Legal Aid Soc., for defendant Joseph Cunzio.

## MEMORANDUM OPINION

MOTLEY, District Judge.

Indictment 79 Cr. 772 charges defendants James Petrone and Daniel Milano in six counts, and defendant Joseph Cunzio in two counts, with conspiracy to possess and distribute heroin, and with the possession and distribution of at least three kilograms of heroin all in violation of 21 U.S.C. §§ 846, 812, and 841.

Defendant Petrone moved for an order, pursuant to Rule 41(f) of the Federal Rules of Criminal Procedure, suppressing all evidence directly or indirectly obtained from the seizure and search of defendant's home on October 25, 1979. Defendant Cunzio filed three motions: 1) a motion to suppress evidence seized from his residence; 2) a motion to suppress his statement made to an Assistant United States Attorney; and 3) a motion to sever his trial.

On January 2, 1980, the above motions were denied. In accordance with the court's orders of that date, the present memorandum opinion accompanies the court's orders denying the motions.

*Petrone's Motion to Suppress*

Defendant Petrone moved for an order, pursuant to Rule 41(f) of the Federal Rules of Criminal Procedure, suppressing all evidence directly or indirectly obtained from the seizure and search of defendant's home

on October 25, 1979. An evidentiary hearing on Petrone's motion revealed the following facts:

Agents of the Drug Enforcement Administration arrested Petrone on October 25, 1979, outside his home. (No challenge has been raised by Petrone as to the probable cause for the arrest.) Special Agent White was aware that persons were inside Petrone's home. The agents then brought Petrone back into his home, thereby preventing removal or destruction of evidence, while awaiting the issuance of a search warrant. While inside the home, the agents assembled Petrone's family in one room, asked a visiting friend to leave, and prevented Petrone's relatives from entering the premises. In short, the agents sealed off the premises and awaited authorization to search. While awaiting the issuance of a warrant, the agents in Petrone's home watched a football game on television.

Special Agent Pavlick meanwhile traveled to the United States Attorney's office and then to Magistrate Gershon's residence in order to secure search warrants. After the warrants were issued, Pavlick and Assistant United States Attorney Baskin phoned the agents in Petrone's home and informed them of the content of the warrant. Upon being informed that a warrant had been issued, Petrone led the agents to the money and gun at issue in this motion. While there is some dispute as to the time when the phone call to the agents was made, Petrone testified that the phone call preceded the search. In any event, the agents, after receiving the phone call, truthfully informed Petrone that a valid warrant had been issued.

Given the facts as described above, Petrone's motion to suppress must be denied. Under Second Circuit law, the agents were authorized not only to seal the Petrone residence but also, if they had so chosen, to conduct a search without waiting for a warrant. For example, in *United States v. Pino*, 431 F.2d 1043, 1045 (2d Cir. 1970), *cert. denied*, 402 U.S. 989, 91 S.Ct. 1675, 29 L.Ed.2d 154 (1971), the Second Circuit approved a warrantless search for contraband inside an apartment:

The agents could not know what other persons might be operating with [the arrested defendants] and what dangers would be risked if one of them established a watch at the apartment while the others proceeded to book and lodge [the defendants] and then proceeded to swear out a search warrant much later that morning.

Delay in searching the apartment in this case would not only have been dangerous for the officer left to guard the apartment, but also would have greatly increased the likelihood that the heroin would either be destroyed or even more likely eventually find its way on to the streets. Thus this was a situation where . . . "the inherent necessities of the situation at the time of arrest" . . . required an immediate search of the entire apartment for the narcotics still there.

*See also United States v. Lozaw*, 427 F.2d 911, 917 (2d Cir. 1970) (Lumbard, C. J., concurring) (joined by Hays, J.).

█ In the case at hand, the agents knew that persons remained inside the Petrone home, and under Second Circuit law the agents probably could have seized the evidence without obtaining a warrant. Accordingly, the agents certainly had authority to follow a far less intrusive policy of merely preventing others from leaving with, hiding, or destroying evidence, while the agents waited for a warrant to be issued. The agents, much to their credit, exercised restraint in following what was, under the circumstances, the preferable course of sealing the house rather than immediately conducting a warrantless search.

█ Petrone raises the additional objection that he did not freely and voluntarily give his consent to the search of his home. Under Second Circuit law, the court must "look to the 'totality of the circumstances' in determining whether a consent to a search is voluntary or not." *United States v. Faruolo*, 506 F.2d 490, 493 (2d Cir. 1974). A defendant's consent is valid where

an agent reasonably believes that a warrant would be obtained and so informs a defendant, so long as there is no deceit or trickery. *Id.* at 494. In the case at hand, the "totality of the circumstances" indicate that Petrone's consent was given freely and voluntarily—there is no evidence of deceit or trickery. Accordingly, Petrone's motion to suppress was denied.

### Cunzio's Motion to Suppress Evidence Seized from His Residence.

Defendant Cunzio moved to suppress evidence seized from his residence, on the ground that the affidavits submitted in support of the warrant to search his residence do not support a finding of probable cause.

In short, the Government's affidavit for the Cunzio search warrant alleges that agents observed Cunzio walk from his apartment with what appeared to be a paper bag in his hand. Cunzio climbed into Milano's car. After Milano drove his car to another location, agents placed Milano and Cunzio under arrest. In the front of the car was found approximately ½ kilogram of heroin in a paper bag.

■ In these circumstances, this court is of the opinion that Magistrate Gershon had probable cause to conclude that Cunzio's apartment would contain heroin or paraphernalia, Magistrate Gershon's determination of probable cause made on the basis of the Government affidavit is entitled to deference by this court. *See United States v. Londono,* 553 F.2d 805, 810 (2d Cir. 1977). Accordingly, Cunzio's motion to suppress evidence seized from his residence was denied.

### Cunzio's Motion to Suppress His Statement

Defendant Cunzio moved to suppress his statement made to Assistant United States Attorney Baskin. An evidentiary hearing on Cunzio's motion to suppress revealed the following facts:

On October 25, 1979, Cunzio was arrested and questioned by the arresting officers. In his affidavit, Cunzio alleges that he then requested the assistance of counsel—Cunzio did not testify at his evidentiary hearing. Upon this request, the questioning ceased.

The next day Cunzio was taken to Assistant United States Attorney Baskin prior to Cunzio's arraignment. Cunzio was again advised of his *Miranda* rights. Cunzio stated that he expected that one of his co-defendants would provide an attorney for him. The co-defendants were brought into the room, and after questioning by Baskin it was determined that the co-defendants would not provide an attorney for Cunzio. Baskin then asked Cunzio if he desired to answer various questions. Cunzio then agreed to answer questions, so long as the questioning pertained solely to his own conduct.

■ Assuming, arguendo, that Cunzio stated that he wanted an attorney at the October 25 and/or October 26 questioning, this court must apply the strictures of *Miranda v. Arizona,* 384 U.S. 436, 475, 86 S.Ct. 1602, 1628, 16 L.Ed.2d 694 (1966): "If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." In the case at hand, the Government has managed to sustain its heavy burden. After being fully informed of his constitutional rights, Cunzio voluntarily agreed to answer questions so long as the questioning pertained solely to his own conduct. Thus, Cunzio made an express statement which constituted a waiver of his right to remain silent.

While Cunzio did not expressly waive his right to counsel, such a waiver can be clearly inferred from his words and actions after being fully informed of his constitutional rights. *North Carolina v. Butler,* 441 U.S. 369, 373, 99 S.Ct. 1755, 1757, 60 L.Ed.2d 286, 292 (1979). Thus, this court is compelled by the Supreme Court's recent decision in *North Carolina v. Butler, supra,* to conclude that in light of the particular facts and circumstances the Government has sustained its great burden of proving that Cunzio knowingly and voluntarily waived

his *Miranda* rights. *But see North Carolina v. Butler, supra,* 441 U.S. at 378, 99 S.Ct. at 1759, 60 L.Ed.2d at 295 (Marshall, J., dissenting) ("only the most explicit waivers of rights can be considered knowingly and freely given"). While it may have been preferable for Assistant United States Attorney Baskin to have brought Cunzio to the magistrate for arraignment prior to questioning, under recent Supreme Court law Baskin could continue questioning after receiving Cunzio's "waiver" of rights. Accordingly, Cunzio's motion to suppress his statement was denied.

*Cunzio's Motion to Sever*

 Defendant Cunzio moved to sever his trial from that of his co-defendants. The burden is on Cunzio to show facts demonstrating that he will be so severely prejudiced by a joint trial that it would, in effect, deny him a fair trial. *United States v. Rucker,* 586 F.2d 899, 902 (2d Cir. 1978). It is not sufficient to demonstrate that he might have a better chance for acquittal at a separate trial. *Id.*

In the case at hand, Cunzio has not met his heavy burden. *See United States v. Sotomayer,* 592 F.2d 1219, 1227 (2d Cir.), *cert. denied,* 442 U.S. 919, 99 S.Ct. 2842, 61 L.Ed.2d 286 (1979). Cunzio alleges that prejudicial "spill-over" may occur since 1) relatively little of the Government's evidence is admissable against Cunzio and 2) Cunzio is implicated in only a fraction of the time period of the alleged conspiracy. As the Second Circuit has explained, the fact that evidence may be admissible against one defendant but not against others does not require separate trials. *United States v. Rucker, supra,* 586 F.2d at 902. "Quite naturally in any multi-defendant trial there will be differences in degree of guilt . . . of the defendants. There may be some likelihood that proof admitted as to one or more defendants will be harmful to the others. However, this possibility does not necessarily justify individual trials." *United States v. Aloi,* 511 F.2d 585, 598 (2d Cir.), *cert. denied,* 423 U.S. 1015, 96 S.Ct. 447, 46 L.Ed.2d 386 (1975). As Cunzio has not met his heavy burden of demon-

strating prejudice, his motion to sever was denied.

*Conclusion*

For the reasons stated above, the court denied the motions discussed above on January 2, 1980.

So ordered.